UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SHAQUITHIA JACKSON,
an individual,

    Plaintiff,

v.

Case Number:
6:16cv1769-orl-41

CENTRAL FLORIDA INVESTMENTS, INC.,
d/b/a WESTGATE RESORTS,
a Florida for-profit corporation, and
COMENITY LLC, d/b/a COMENITY BANK,
a foreign limited liability company,

    Defendants.
_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, SHAQUITHIA JACKSON (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, CENTRAL FLORIDA INVESTMENTS, INC., d/b/a WESTGATE RESORTS (hereinafter, "WR") and COMENITY LLC, d/b/a COMENITY BANK (hereinafter, "CB") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

### INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendants' violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

### JURISDICTION AND VENUE

1. Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 28 United States Code, Section 1337, and supplemental jurisdiction exists for the FCCPA claims

1

pursuant to 28 United States Code, Section 1367.

2. Venue in this District is proper because Defendants transact business in this District, the conduct complained of occurred in this District, and WR's principal place of business is located in this District.

3. At all material times herein, Plaintiff is an individual residing in Williamson County, Tennessee.

4. At all material times herein, WR is a Florida for-profit corporation that, itself and through its subsidiaries, regularly collects consumer debts related to and associated with timeshare interests. Its principal place of business is located in Orange County, Florida.

5. At all material times herein, CB is a foreign limited liability company existing under the laws of the state of Ohio, that, itself and through its subsidiaries, regularly extends credit card financing to consumers purchasing timeshare properties.

## GENERAL ALLEGATIONS

6. At all material times herein, Defendants are each a "creditor" as defined by Florida Statutes, Section 559.55(5).

7. At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by Florida Statutes, Section 559.55(8).

8. At all material times herein, Defendants attempt to collect a debt, specifically an alleged balance due on a consumer credit card used to finance an initial deposit on a timeshare property from WR, referenced by account number ending in -4952 (hereinafter, the "Debt").

9. At all material times herein, the Debt is a consumer debt, an obligation resulting from a transaction for goods or services and was incurred primarily for personal, household or family use.

10. At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.55(5). *See* Fla. Stat., Section 559.55(5); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

11. At all material times herein, Defendants' conduct, with regard to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

12. At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

13. All necessary conditions precedent to the filing of this action occurred or have been waived by Defendants.

## FACTUAL ALLEGATIONS

14. Defendants' telephone calls, as more specifically alleged below, were made to Plaintiff's cellular telephone using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

15. Plaintiff is the owner, regular user, and possessor of a cellular telephone with assigned number ending in -2539 (hereinafter, "Cellular Telephone").

16. At no time herein did Defendants possess Plaintiff's prior express consent to make calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

17. Further, if Defendants contend they possessed such consent, Plaintiff revoked such consent the moment she demanded that CB cease calling her Cellular Telephone.

18. Additionally, if Defendants contend said phone calls were made for "informational purposes only," they nonetheless lacked the required prior express written consent necessary to

3

make such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

19. Upon information and belief, in July 2014, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

20. During the immediately-aforementioned call, Plaintiff spoke with CB's employee or representative, and Plaintiff disputed the Debt and demanded that Defendants cease calling Plaintiff's Cellular Telephone.

21. On or about August 4, 2014, CB sent Plaintiff a letter advising that WR confirmed the validity of the Debt to CB. Please see attached a true and correct copy of said letter labeled as Exhibit "A."

22. On or about September 2, 2014, Plaintiff called WR to dispute the Debt. In response, WR informed Plaintiff that WR would not refund Plaintiff's initial deposit with respect to the Debt until Plaintiff's co-applicant, Quincy Coates, satisfied the Agreement.

23. On or about September 10, 2014, Plaintiff again disputed the Debt to CB.

24. On or about September 11, 2014, CB sent Plaintiff a letter advising that CB would investigate Plaintiff's dispute of the Debt. Please see attached a true and correct copy of said letter labeled as Exhibit "B."

25. On or about September 30, 2014, Plaintiff sent WR a letter disputing the Debt and again requesting that WR refund the initial deposit with respect to the Debt. Please see a true and correct copy of said letter labeled as Exhibit "C."

26. On or about October 13, 2014, CB sent Plaintiff a letter advising that WR again confirmed the validity of the Debt to CB. Please see a true and correct copy of said letter labeled as Exhibit "D."

27. Between November 2014 and February 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—routinely called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in an attempt to collect the Debt.

28. Further, during the above-referenced period, Defendants made calls to Plaintiff's Cellular Telephone continuously, often making calls to Plaintiff three (3) to six (6) times per day on her Cellular Telephone.

29. Moreover, when Plaintiff answered Defendant's calls, Plaintiff repeatedly and often demanded that CB cease calling her Cellular Telephone.

30. On or about March 7, 2015 at approximately 7:11 p.m. CST, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

31. CB made the immediately-aforementioned call from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

32. On or about March 9, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

33. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

34. On or about March 10, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone four (4) times using an ATDS, a PTDS, or an APV.

35. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

36. On or about March 11, 2015, CB, on WR's behalf—and with its consent,

Case 6:16-cv-01769-CEM-DCI Document 1 Filed 10/11/16 Page 6 of 17 PageID 6

knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

37. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

38. On or about March 12, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone two (2) times using an ATDS, a PTDS, or an APV.

39. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

40. On or about March 13, 2015 at approximately 4:35 p.m. CST, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

41. CB made the immediately-aforementioned call from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

42. On or about March 14, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone two (2) times using an ATDS, a PTDS, or an APV.

43. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

44. On or about March 15, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone four (4) times using an ATDS, a PTDS, or an APV.

45. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

6

46. On or about March 20, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

47. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

48. On or about March 21, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

49. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

50. On or about March 23, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

51. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

52. On or about March 27, 2015 at approximately 6:08 p.m. CST, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

53. CB made the immediately-aforementioned call from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

54. On or about March 28, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

55. CB made the immediately-aforementioned calls from telephone number

913.312.5184 in an attempt to collect the Debt from Plaintiff.

56. On or about March 30, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone four (4) times using an ATDS, a PTDS, or an APV.

57. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

58. On or about March 31, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone two (2) times using an ATDS, a PTDS, or an APV.

59. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

60. On or about April 1, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

61. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

62. On or about April 2, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone three (3) times using an ATDS, a PTDS, or an APV.

63. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

64. On or about April 3, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone six (6) times using an ATDS, a PTDS, or an APV.

65. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

66. On or about April 4, 2015, CB, on WR's behalf—and with its consent, knowledge, and approval—called Plaintiff's Cellular Telephone five (5) times using an ATDS, a PTDS, or an APV.

67. CB made the immediately-aforementioned calls from telephone number 913.312.5184 in an attempt to collect the Debt from Plaintiff.

68. On or about July 22, 2015, Plaintiff retained Leavengood, Dauval, Boyle & Meyer, P.A. (hereinafter "Undersigned Counsel") for representation with respect the Debt and Defendants' associated collection efforts on the Debt.

69. On or about September 11, 2015, Undersigned Counsel sent CB a facsimile message which provided CB actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt, provided actual knowledge Undersigned Counsel's contact information, and requested that all direct communication with respect to the Debt cease with Plaintiff and should be directed to Undersigned Counsel's office (hereinafter, "CB's Notice of Representation"). Please see attached a true and correct copy of CB's Notice of Representation with delivery confirmation labeled as Exhibit "E."

70. On or about September 11, 2015, Undersigned Counsel sent WR a letter via certified mail which provided WR actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt, provided actual knowledge Undersigned Counsel's contact information, and requested that all direct communication with respect to the Debt cease with Plaintiff and should be directed to Undersigned Counsel's office (hereinafter, "WR's Notice of Representation"). Please see attached a true and correct copy of WR's Notice of Representation with delivery confirmation labeled as Exhibit "F."

71. On or about September 25, 2015, despite possessing actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt and despite possessing Undersigned Counsel's contact information, CB, on WR's behalf—and with its consent, knowledge, and approval—directly sent Plaintiff an e-mail in an attempt to collect the Debt. Please see attached a true and correct copy of said e-mail labeled as Exhibit "G."

72. Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff. Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the total calls she is aware of, and each call caused stress, anxiety, and inability to use her Cellular Telephone when CB made such calls, all in violation of the FCCPA and TCPA. Defendants are in the best position to determine and ascertain the number and methodology of calls made to Plaintiff.

73. As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, confusion and loss of sleep, believing that Plaintiff's dispute of the Debt was wholly ineffective, Plaintiff's repeated demands that Defendants cease calling her Cellular Telephone were wholly ineffective, Plaintiff's hiring of an attorney with respect to the Debt was wholly ineffective, and that the frequent, repeated Debt collection attempts would simply have to be endured.

74. Plaintiff retained Undersigned Counsel for the purposes of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

75. Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

76. United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made using any ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

77. Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or up to $1,500.00, for each telephone call made using ATDS, PTDS, or APV to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

78. As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Debt. Likewise, no final judgment regarding the Debt has been obtained by, or transferred to, Defendants.

### COUNT ONE:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORDA STATUTES, SECTIONS 559.72(7)

Plaintiff re-alleges paragraphs one (1) through seventy-eight (78) as if fully restated herein and further state as follows:

79. Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

80. Specifically, despite lacking Plaintiff's prior express consent to call her Cellular Telephone, CB, on WR's behalf—and with its consent, knowledge, and approval—made approximately three (3) to six (6) calls per day to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in its attempts to collect the Debt between November 2014 and February 2015.

81. Further, despite lacking Plaintiff's prior express consent to call her Cellular Telephone, CB, on WR's behalf—and with its consent, knowledge, and approval—made *at least*

fifty-six (56) calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in its attempts to collect the Debt between March 2015 and April 2015.

82. Moreover, Defendants possessed actual knowledge of Undersigned Counsel's representation of Plaintiff's with respect to the Debt, possessed Undersigned Counsel's contact information, and possessed actual knowledge that all communication with respect to the Debt must cease with Plaintiff and should be directed to Undersigned Counsel's office.

83. Despite possessing the above-referenced knowledge, CB, on WR's behalf—and with its consent, knowledge, and approval—sent *at least* one (1) e-mail directly to Plaintiff in an attempt to collect the Debt.

84. Defendants intended to abuse and harass Plaintiff into paying the Debt by leading Plaintiff to believe that despite invoking her consumer rights and demanding that Defendants cease calling her Cellular Telephone, despite her repeated disputes regarding the Debt, and despite retaining legal counsel with respect to the Debt, Defendants' unlawful collection communications would continue until the Debt is satisfied.

85. Defendants' willful and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statues, Section 559.72(7).

86. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT TWO:
### UNLAWFUL DEBT COLLECTION PRACTICE –
### VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)

Plaintiff re-alleges paragraphs one (1) through seventy-eight (78) as if fully restated herein and further states as follows:

87. Defendants are subject to, and violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally communicating directly with Plaintiff after receiving actual notice that Plaintiff was represented by legal counsel with respect to the Debt.

88. Specifically, Defendants each possessed actual knowledge of Undersigned Counsel's representation of Plaintiff with respect to the Debt, Undersigned Counsel's contact information, and that all communication with respect to the Debt must cease with Plaintiff and should be directed to Undersigned Counsel's office.

89. Despite the above-referenced knowledge, CB, on WR's behalf—and with its consent, knowledge, and approval—sent *at least* one (1) e-mail directly to Plaintiff in an attempt to collect the Debt.

90. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

### COUNT THREE:
### TELEPHONE CONSUMER PROTECTION ACT-
### VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through seventy-eight (78) as if fully restated herein and further states as follows:

91. Defendants are subject to, and violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, a PTDS, or an APV to call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

92. At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

93. Further, if Defendants contend they possessed such consent, Plaintiff revoked such consent the moment she demanded that CB cease calling her Cellular Telephone, and again each time thereafter.

94. Additionally, if Defendants contend said phone calls were made for "informational purposes only," they nonetheless lacked the required prior express written consent necessary to make such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

95. Despite lacking Plaintiff's prior express consent to call her Cellular Telephone, CB, on WR's behalf—and with its consent, knowledge, and approval—made *up to* six (6) calls per day to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in its attempts to collect the Debt between November 2014 and February 2015.

96. Further, despite lacking Plaintiff's prior express consent to call her Cellular Telephone, CB, on WR's behalf—and with its consent, knowledge, and approval—made *at least* fifty-six (56) calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV in its attempts to collect the Debt between March 2015 and April 2015.

97. As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

   a. The periodic loss of her Cellular Telephone service;

   b. Lost material costs associated with the use of peak time cellular telephone minutes allotted under her Cellular Telephone service contract; and

   c. Stress, anxiety, loss of sleep, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls made in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests entry of:

   a. Judgment against Defendants, declaring that Defendants violated the FCCPA;

b. Judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c. Judgment against Defendants, declaring that Defendants violated the TCPA;

d. Judgment against Defendants for statutory damages in the amount of $500.00 for each telephone call Defendants made in violation of the TCPA;

e. Judgment against Defendants for treble damages, in an amount up to $1,500.00, for each telephone call made in violation of the TCPA for which Defendants acted knowingly and/or willingly;

f. Judgment against Defendants for actual damages incurred by Plaintiff in an amount to be determined at trial;

g. An award of reasonable attorneys' fees and costs; and

h. Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

*/s/ Aaron M. Swift*
☐ Ian R. Leavengood, Esq., FBN 0010167
[X] Aaron M. Swift, Esq., FBN 093088
☐ Gregory H. Lercher, Esq., FBN 0106991
☐ Sara J. Weiss, Esq., FBN 0115637
Northeast Professional Center

3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
aswift@leavenlaw.com
glercher@leavenlaw.com
sweiss@leavenlaw.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF Michigan )
)
COUNTY OF Washtenaw )

Plaintiff SHAQUITHIA JACKSON, having first been duly sworn and upon oath, deposes and says as

follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_S. Jackson_
Shaquithia Jackson

Subscribed and sworn to before me
this 19th day of July, 2016.

_Emily M Klosterhaus_
Notary Public

My Commission Expires:

Proof of I.D.: TN Drivers License

EMILY M KLOSTERHAUS
NOTARY PUBLIC - STATE OF MICHIGAN
COUNTY OF WAYNE
My Commission Expires Sept. 02, 2017
Acting In the County of Washtenaw

Washtenaw